# Exhibit 9

# Morvillo Abramowitz Grand Iason & Anello P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG
LISA ZORNBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

————

WRITER'S CONTACT INFORMATION

jsack@maglaw.com
(212) 880-9410

April 7, 2025

COUNSEL
JOSHUA BUSSEN
PIPPA HYDE***
————
RETIRED/PARTNER EMERITUS
PAUL R. GRAND
————
ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN ENGLAND AND WALES

**<u>By Email (peter.davis2@usdoj.gov & thomas.burnett@usdoj.gov)</u>**
Peter J. Davis, Esq.
Thomas Burnett, Esq.
Assistant United States Attorneys
Southern District of New York
United States Department of Justice
26 Federal Plaza
New York, NY 10278

Re:    *United States v. Leech*, No. 1:24-cr-00658 (GHW) (S.D.N.Y.)

Dear Peter and Tom:

I write in response to your letters dated February 6, 2025 concerning (1) your Office's review of materials obtained from Apple and Google accounts associated with my client, S. Kenneth Leech II (the "Filter Review Letter"), and (2) your requests for information regarding certain of Mr. Leech's privilege assertions over those materials (the "Privilege Assertions Letter").

In the Filter Review Letter, you disclosed that the filter review process used by your Office led to "potentially privileged" documents being reviewed by the Prosecution Team. (Filter Review Letter at 2.)  For the reasons set forth below, we request that you promptly provide us with the additional information specified below (*see* p. 7) regarding the filter review process and the potentially privileged documents that the Filter Team disclosed to the Prosecution Team so we can determine what relief may be warranted for the apparent violation of our client's rights.[1]

---

[1] The Filter Review Letter defines the "Filter Team" as "a filter team under the supervision of AUSA Molly Canick, the Office's Privilege Review Coordinator."  Your letter dated November 4, 2024 defines the "Prosecution Team" as "the team in charge of this prosecution."  Both definitions are incorporated herein.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

Peter J. Davis, Esq.
Thomas Burnett, Esq.
April 7, 2025
Page 2

I.      **Filter Review**

        A.      <u>The Applicable Law</u>

        It is well-settled that, where potentially privileged documents are seized during an investigation, a review procedure will be implemented to prevent the attorneys and agents responsible for the investigation from accessing potentially privileged information. *See, e.g.*, *In re Search Warrant Dated Nov. 5, 2021*, No. 21 MISC. 813 (AT), 2021 WL 5845146, at \*1 (S.D.N.Y. Dec. 8, 2021) (contrasting the use of a filter team with the appointment of a special master to prevent improper access to privileged materials). The Justice Department recognizes that the implemented review procedures will adequately protect against the disclosure of privileged documents to the individuals responsible for the investigation or prosecution. *See* U.S. Dep't of Just., *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations,* ch. 2(F)(2)(b) (3d ed. 2009), *available at* https://www.justice.gov/d9/criminal-ccips/legacy/2015/01/14/ssmanual2009_002.pdf ("Although no single standard has emerged, courts have generally indicated that evidence screened by a filter team will be admissible only if the government shows that its procedures adequately protected the defendants' rights and no prejudice occurred.").

        Courts have highlighted the risks of allowing the filter team unilateral authority to determine that a document is not privileged and can be disclosed to the prosecution. *See, e.g.*, *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 178 (4th Cir. 2019), *as amended* (Oct. 31, 2019) (criticizing filter protocol for leaving "the government's fox in charge of guarding the [privilege-holder's] henhouse"); *United States v. Ritchey,* 605 F.Supp.3d 891, 903 (S.D. Miss. June 3, 2022) (enjoining the government from employing a filter team protocol that gave it "unilateral" authority to decide what was privileged before turning material over to the prosecution team); *see United States v. Kaplan*, No. 02-CR-883 (DAB), 2003 WL 22880914, at \*12 (S.D.N.Y. Dec. 5, 2003) (expressly disapproving of the use of a filter team where, as here, "potentially privileged materials are turned over to the trial team and case agents before any challenge to those determinations can be raised by a Defendant and determined by a court").

        To the extent courts in this Circuit have "blessed" the use of filter reviews, *United States v. Avenatti*, 559 F. Supp. 3d 274, 278 (S.D.N.Y. 2021), they have done so under circumstances differing significantly from the approach taken here. The differences lie in both the process by which the filter reviews were implemented (*e.g.*, whether the filter review protocol was approved by the court or disclosed to defense counsel before the review process began) and the terms of the filter review protocols themselves (*e.g.*, whether the protocol provided the privilege-holder notice and an opportunity to object prior to the disclosure of documents to the prosecution team).

Morvillo Abramowitz Grand Iason & Anello P. C.

Peter J. Davis, Esq.
Thomas Burnett, Esq.
April 7, 2025
Page 3

> 1.  Implementation of the Filter Review

In the vast majority of Southern District cases endorsing filter reviews, ***prior to the commencement of a filter review***, either the government confers with the privilege holder regarding the filter review, or the court approves the implementation of the review, or both.  That was not done in this case.

For example, in *United States v. Sharma*, defendants moved to dismiss the indictment or, in the alternative, disqualify the AUSAs and appoint an independent examiner to review documents seized from a messaging service, when 21 privileged documents were improperly released by the filter team.  No. 18-CR-340 (LGS), 2019 WL 3802223, at *5 (S.D.N.Y. Aug. 13, 2019).  In denying the defendants' motion, the court emphasized that the defendants had agreed to the filter review protocol before the government reviewed any documents.  *Id.*  Challenges have similarly been rejected when defendants were aware of and had the opportunity to object to the use of a filter team before the government began its review.  *See, e.g.*, *United States v. Feng Ling Liu*, No. 12-CR-934 RA, 2014 WL 101672, at *12 (S.D.N.Y. Jan. 10, 2014) (rejecting challenge to use of filter team when government offered to provide defense counsel with details of proposed review procedure and defendants nonetheless failed to object to procedure before government began its review).

Courts have also rejected challenges to filter reviews where the government obtained judicial approval of the use of filter teams in either ex parte or adversarial settings before the commencement of the filter review.  *See, e.g.*, *Avenatti*, 559 F. Supp. 3d at 281–82 (use of filter team disclosed in search warrant application); *Feng Ling Liu*, 2014 WL 101672, at *12 (search warrant affidavits "spell[ed] out in detail the wall procedure"); *United States v. Grant*, No. 04-CR-207 (BSJ), 2004 WL 1171258, at *1 (S.D.N.Y. May 25, 2004) (defendants had opportunity to challenge terms of filter protocol before government began reviewing contents of documents, and court denied motion, approving terms of protocol).  In *Avenatti*, for example, Judge Furman held that the government was generally "entitled to rely on [the court's] approval" of the use of a filter team because the government disclosed its intent to use a filter team in the search warrant application.  559 F. Supp. 3d at 281–82.[2]

---

[2] Courts outside the Second Circuit have criticized the government for implementing filter reviews without first seeking the privilege-holder's approval "by an informal, good-faith resolution" with counsel, including the proposed protocol in a search warrant application, or otherwise obtaining court approval in an adversarial context, ***before turning over documents to the prosecution team***.  *See, e.g.*, *In re Ethics Investigation of Allegations Raised by UDF*, No. 4:22-MC-01-O, 2023 WL 3327251, at *20 (N.D. Tex. Feb. 6, 2023) (criticizing government for implementing filter team without informing privilege-holder or court of filter team protocol), *report and recommendation adopted*, No. 4:22-MC-01-O, 2023 WL 3322586 (N.D. Tex. May 9, 2023); *Ritchey*, 605 F. Supp. 3d at 901, 903 (finding filter review protocol inadequate for

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Peter J. Davis, Esq.
Thomas Burnett, Esq.
April 7, 2025
Page 4

> 2.  Substantive Terms of the Protocol

The filter protocols that have been endorsed in this District have afforded far greater protections against the intrusion of attorney-client privilege than existed here.

By way of example, in numerous cases, courts have approved review protocols that provided for privilege reviews conducted by court-appointed, independent special masters. *See, e.g.*, *In re Search Warrant Dated Nov. 5, 2021*, No. 21 MISC. 813 (AT), 2021 WL 5845146, at *2 (S.D.N.Y. Dec. 8, 2021); *United States v. Stewart*, No. 02-CR-395 (JGK), 2002 WL 1300059, at *10 (S.D.N.Y. June 11, 2002); Transcript of Hearing at 8, *In re Search Warrants Executed on April 9, 2018*, No. 18-MJ-3161 (S.D.N.Y. May 2, 2018), ECF No. 38; *see also In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006) ("*Winget*") (requiring initial privilege review to be conducted by a magistrate judge or special master and noting that "the government taint team may have an interest in preserving privilege, but it also possesses a conflicting interest in pursuing the investigation").

In those instances where Southern District judges have endorsed privilege reviews by filter teams consisting of prosecutors, the review protocols ensured that the privilege holders would receive "notice and the opportunity to raise objections with the court ***before potentially privileged materials are disclosed to members of the prosecution team***." *Avenatti*, 559 F. Supp. 3d at 284 (emphasis added); *SEC v. Lek Securities Corp.,* No. 17-CV-1789, 2018 WL 417596, at *2 (S.D.N.Y. Jan. 16, 2018); *see also United States v. Combs*, No. 24-CR-542 (AS), 2025 WL 485377, at *5 (S.D.N.Y. Feb. 12, 2025) (denying relief under the Sixth Amendment but nonetheless recommending that filter team clear potentially privileged documents with defense counsel before turning them over to prosecution team).

In *Avenatti*, the defendant moved to suppress the fruits of the government's search of his iCloud account and preclude the government from searching the contents of his iPad to which it had only recently gained access. *Id.* at 277, 281. In denying Avenatti's motion to suppress the fruits of the government's search of his iCloud account, Judge Furman observed that "notably, [Avenatti] had ample opportunity to raise any objections to the review process *before any materials were actually disclosed to the prosecution team*." *Id.* at 284–85 (emphasis added).

---

creating the appearance of non-neutrality, citing that the search warrant "did not mention a potential filter team protocol," that "[a]fter executing the [warrant] . . . , the Government did not seek court preapproval or an informal agreement with the defendant," and that the defendant was not "*fully* aware of the filter team protocol" until over a year after the warrant was executed); *see also* Elizabeth Williams, Annotation, *Attorney-Client Privilege: Use of Taint or Filter Teams in Federal Investigations and Prosecutions,* 74 A.L.R. Fed. 3d Art. 5 (2022) ("[T]he government typically seeks court preapproval of its filter team protocol in an adversarial context or an informal, good faith resolution with the defendant . . .").

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

Peter J. Davis, Esq.
Thomas Burnett, Esq.
April 7, 2025
Page 5

Judge Furman also overruled the defendant's objections to the filter team's forthcoming review of the contents of his iPad, but did so contingent upon the same requirement: "that[] before any contents are shared with any member of the prosecution team, the Government shall give Avenatti reasonable notice and an opportunity to raise with the Court any objections to the filter team's privilege determinations." *Id.* at 286 (citing *Grant*, 2004 WL 1171258, at *2); *Grant*, 2004 WL 1171258, at *2 (holding defendant would not be prejudiced by filter review because "after the privilege team reviews the documents for privilege, the Defendant will have the opportunity to make objections to the Court before any documents are turned over to the trial team").[3]

> B.    The Process Used to Review the Google Materials and the Apple Materials

As outlined in the Filter Review Letter, your Office obtained warrants for Mr. Leech's emails in early 2024, and received materials pursuant to the warrants (the "Google Materials" and the "Apple Materials") soon thereafter.  (Filter Review Letter at 1.)  The Filter Team reviewed these materials seeking to identify and segregate potentially privileged materials by using search terms that included "common legal terms" and terms you described as having been "specifically derived from attorneys and law firms representing Leech, Western Asset Management Company, and Franklin Templeton."  (*Id.*)  After that review, the Filter Team released the materials it deemed not potentially privileged to the Prosecution Team for its responsiveness review, starting with the release of certain Google Materials in April 2024 and followed by the release of certain Apple Materials in August 2024.  (*Id.* at 2.)

You did not disclose any information regarding the filter review process you intended to use in connection with the warrant application, and the Filter Review Letter concedes that the Filter Team's review was deficient.  Thus, the Filter Review Letter acknowledges that members of the Prosecution Team were given access to potentially privileged materials by asserting that,

---

[3] Courts outside the Second Circuit have likewise recognized that the opportunity to review and object prior to the release of potentially privileged documents mitigates the risk that a filter team will inadvertently provide privileged materials to the team conducting the investigation.  *See, e.g.*, *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235, 1249 (11th Cir. 2021) (deeming filter protocol sufficient when it required the privilege-holders' "permission or court order for any purportedly privileged documents to be released to the investigation team"); *In re Search Warrants*, No. 21-CV-04968 (SDG), 2021 WL 5917983, at *6 (N.D. Ga. Dec. 15, 2021), *on reconsideration in part*, No. 21-CV-4968 (SDG), 2022 WL 19075290 (N.D. Ga. Mar. 2, 2022) (imposing modified protocol that permitted privilege-holders to review all documents before their production to prosecution team, and required submission of disputed items submitted to court or special master for privilege determination).

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

Peter J. Davis, Esq.
Thomas Burnett, Esq.
April 7, 2025
Page 6

when the Prosecution Team recognized that potentially privileged documents had been released, it "would immediately pause its review and notify the Filter Team, so the Filter Team could conduct a supplemental privilege review, if necessary." (Filter Review Letter at 2.) The Filter Review Letter suggests this occurred on several occasions, noting that the supplemental review process was invoked "**each time the prosecution team encountered materials that appeared to be potentially privileged.**" (*Id.* (emphasis added).)

It was not until September 9, 2024, many months into your Office's review of the Google Materials and the Apple Materials and approximately five months after the Filter Team started turning materials over to the Prosecution Team, that your Office first notified me and my colleagues that it had obtained Mr. Leech's personal emails and asked us to identify individuals with whom Mr. Leech may have had privileged communications. (Email from Peter Davis to Jonathan Sack (Sept. 9, 2024, 10:34 a.m. EST).) By letter dated September 24, 2024, we provided the requested list, but expressed our concern "that the government may not identify all privileged communications simply by screening for the names or email addresses on the enclosed list" and asked you to "advise us of the process the Office intends to use to ensure that potentially privileged material is not reviewed or otherwise considered in connection with the government's investigation." (Letter from Jonathan Sack to Peter Davis (Sept. 24, 2024) at 1.)

It was not until November 4, 2024 that your Office provided my firm with the opportunity to conduct its own review of four sets of documents: two sets the Filter Team had preliminarily designated as non-privileged (the "Apple Non-Priv Set" and the "Google Non-Priv Set") and two sets the Filter Team had preliminarily designated as potentially privileged (the "Apple Potentially Priv Set" and the "Google Potentially Priv Set"). (Letter from Thomas Burnett & Peter Davis to Jonathan Sack (Nov. 4, 2024).) You requested that we complete our privilege review of the four sets (totaling over 35,000 documents) in about one month. (*Id.* at 2.) And you did not respond to our September 24, 2024 request for information regarding the review process itself until February 6, 2025. (Filter Review Letter.)

C.    The Filter Review Process Failed to Safeguard Mr. Leech's Privileged and Work-Product Information

The review process described in the Filter Review Letter suffered from at least three fundamental defects. *First*, your Office did not seek my input into the filter review protocol let alone the search terms that should have been used to identify potentially privileged documents. This failure to give me the opportunity to have input into the review protocol is especially problematic in light of the fact that your Office knew I was aware of the investigation and representing Mr. Leech at the time it applied for the search warrants and before the Filter Team received and reviewed the Google Materials and the Apple Materials. (*See* Filter Review Letter at 1 (warrants obtained in "early 2024").)

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

Peter J. Davis, Esq.
Thomas Burnett, Esq.
April 7, 2025
Page 7

*Second*, your search warrant application was silent regarding your intent to use a filter team, let alone the protocol you planned to use, and thus you cannot argue that you relied in good faith on the judicial imprimatur contained in the warrants.

*Third*, the Filter Team started releasing documents from the Google Materials and the Apple Materials to the Prosecution Team in April and August 2024, respectively, without giving Mr. Leech "notice and the opportunity to raise objections with the court before potentially privileged materials [we]re disclosed to members of the prosecution team." *Avenatti*, 559 F. Supp. 3d at 284. That you later gave us the opportunity to review the documents—at least some of which you concede had already been disclosed to the Prosecution Team—is no substitute for the opportunity to raise objections before the documents were turned over.

* * *

To enable us to evaluate the extent to which Mr. Leech's rights and privileges were violated, please promptly inform us of (1) the search terms used by the Filter Team and, if those search terms changed over time, when each term was first used; (2) the dates on which the Prosecution Team concluded it was necessary to pause its review and give the Filter Team additional guidance; (3) which documents the Filter Team provided to the Prosecution Team each time it released documents; (4) which of the documents disclosed triggered the Prosecution Team to conclude it was necessary to pause its review and give the Filter Team additional guidance; (5) the circumstances that led the Prosecution Team to pause its review in or around the beginning of September 2024 "to have further dialogue with defense counsel about materials defense counsel believed may be potentially privileged"; and (6) to the extent the Filter Team is continuing to review documents, the steps your Office is taking to ensure that it does not provide additional potentially privileged documents to the Prosecution Team.

## II.    Privilege Assertions

In response to the requests for information set forth in the Privilege Assertions Letter:

*First*, you inquired about the "Non-Attorney Agent" privilege designation. The documents bearing this designation are communications between and among (a) Mr. Leech and/or attorneys, agents, employees, or other individuals acting on behalf of Mr. Leech and experts and (b) consultants retained by Mr. Leech's attorneys to advise on issues relating to the investigations of Mr. Leech's trades and allocations at the Western Asset Management Company and the related enforcement actions that have been brought against him (together, the "Trade Allocation Matters"). These communications were made in connection with matters relating to counsel's provision of legal advice to Mr. Leech.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

Peter J. Davis, Esq.
Thomas Burnett, Esq.
April 7, 2025
Page 8

A formal engagement letter is not a prerequisite to the assertion of work product protection with respect to work performed by experts assisting in the preparation of Mr. Leech's defense.  Nonetheless, annexed to this letter as Exhibits A through E are executed agreements between Mr. Leech's attorneys and Stephen K. Leech III,[4] Sean Malone,[5] Dexter Senft,[6] Autumn Soukup,[7] and Michael Weinstein,[8] all of whom were retained to advise on issues relating to— and have been remunerated for their work in connection with—the Trade Allocation Matters.[9] As to Nicolas Dovetta, without prejudice to our objections to your Filter Team review process, we do not object to the disclosure to the Prosecution Team of the two communications with Mr. Dovetta that were previously designated as privileged.[10]

---

[4] Stephen K. Leech III, CFA has experience in the fixed income investment markets.  Mr. Leech currently serves as the Founder and Chief Investment Officer of Powder River Capital Management and had previously worked as an analyst at Miller Value Partners and as an analyst and later a Vice President of Fixed Income at The TCW Group.

[5] Dr. Malone has a Ph.D. in Finance from The University of Texas at San Antonio.  He is the Associate Director of Analytics in the Advisory division of IMS Legal Strategies which provides expert services in the fields of statistics, finance, and economics.

[6] Mr. Senft had a 43-year career on Wall Street as a fixed income quantitative analyst and managing director overseeing departments including fixed income trading.  He has held top positions at Morgan Stanley, Barclays Capital, Lehman Brothers, EJV Partners, and The First Boston Corporation.

[7] Ms. Soukup supported Mr. Senft with quantitative analysis.  She has a bachelor's degree in computer science.

[8] Mr. Weinstein is a consultant and attorney specializing in services for financial institutions.

[9] In addition to requesting retention agreements, you have also asked for records of payments made to these individuals.  Because the application of privilege does not turn on whether an individual assisting counsel in providing legal advice is paid, *see, e.g.*, *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 139 (N.D.N.Y. 2007) (individual's status as unpaid volunteer does not in and of itself vitiate privilege or create a waiver), in the absence of any authority supporting your entitlement to payment information, I am declining to provide it.

[10] These documents are USAO_GOOGLE_02_00001471 and USAO_GOOGLE_02_00003724.  Our consent to the disclosure of these documents is without prejudice to the invocation of work product protections with respect to other communications between and among Mr. Dovetta, Mr. Leech, Mr. Leech's counsel, and other experts assisting Mr. Leech's counsel.

Morvillo Abramowitz Grand Iason & Anello P. C.

Peter J. Davis, Esq.
Thomas Burnett, Esq.
April 7, 2025
Page 9

*Second*, you inquired about our assertion of privilege with respect to certain of Mr. Leech's confidential communications with his wife, Eileen, that included other participants. This description applies to two categories of documents as to which Mr. Leech asserted spousal privilege: first, communications where the top email includes a participant, other than Mr. and Mrs. Leech, who is covered by another privilege ("Category 1"), and second, email chains that initially included other participants and were thereafter forwarded either to or from Mrs. Leech in confidence ("Category 2"). The documents you identified in your letter (USAO_GOOGLE_02_00005314 and its attachment) are the only documents falling into Category 1. They consist of an email and its attachment, sent in confidence between Mr. Leech, Mrs. Leech (his agent), and Stephen Leech (a retained expert whose communications with Mr. Leech and Mr. Leech's agents are protected by the attorney-client privilege and the work product doctrine), and the privileges applicable to Mrs. Leech and Stephen Leech are not waived by virtue of their combination. *See* 3 Weinstein's Federal Evidence § 511.07 (2025) ("There is no waiver when the disclosure is made in another communication that is itself privileged."). The communications concern the Trade Allocation Matters, and specifically, reflect Mrs. Leech's questions and comments regarding the work product of another retained expert.

Moreover, even if this communication was not covered by the spousal privilege, it would be protected by the attorney-client privilege. *See In re Grand Jury Subpoenas Dated Mar. 24, 2003 Directed to (A) Grand Jury Witness Firm & (B) Grand Jury Witness*, 265 F. Supp. 2d 321, 332 n.51 (S.D.N.Y. 2003) ("That Target's spouse was present during some of these conversations does not destroy any applicable privilege"); *see also In re Lifetrade Litig.,* No. 17-CV-2987 (JPO) (KHP), 2022 WL 3644357, at *2, 6 (S.D.N.Y. Aug. 24, 2022) (applying New York attorney-client privilege law, which is "nearly indistinguishable from federal law," and holding that the presence of a spouse does not result in the waiver of attorney-client privilege; while generally the privilege is waived upon disclosure to a third party, "if the third party is an agent of the attorney or client" and the communication is made with an expectation of confidentiality, then the disclosure does not result in a waiver). Mrs. Leech, who is a trained lawyer, participated in this communication as Mr. Leech's spouse, trusted advisor, and agent, in the presence of another agent, retained expert Stephen Leech. Her presence does not waive the attorney-client privilege that otherwise protects communications between a defendant and his retained experts.

Mr. Leech also asserts the spousal privilege over Category 2 emails, which are email chains that initially included other participants and were thereafter forwarded either to or from Mrs. Leech in confidence. Such emails are privileged in their entirety because the information intended to be conveyed in confidence by one spouse to the other—and thus, the communication protected by the spousal privilege—includes the forwarded content, and the fact of its communication is privileged, even if the underlying content is not. *Cf. Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir. 2009) (holding, in the analogous *Upjohn* context, that "even though one e-mail is not privileged, a second e-mail which

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

Peter J. Davis, Esq.
Thomas Burnett, Esq.
April 7, 2025
Page 10

forwards that prior e-mail to counsel might be privileged in its entirety"). In such instances, the "forwarded material is similar to prior conversations or documents that are quoted verbatim" in privileged correspondence. *Id.* This comports with the well-settled principle that even when information is not privileged, the fact of its communication may be privileged. *See, e.g.*, *id.*; *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521 (WHO), 2015 WL 7566741, at *4 (N.D. Cal. Nov. 25, 2015) (noting that "communications of facts are privileged even if the original facts are not" (quoting *Muro*)); *see also Gen. Elec. Co. v. United States*, No. 3:14-CV-00190 (JAM), 2015 WL5443479, at *1 (D. Conn. Sept. 15, 2015) (holding that "information communicated to an attorney in connection with obtaining or rendering legal advice is properly subject to a claim of privilege, even if the information standing alone would not otherwise be subject to a claim of privilege").

*Third*, you inquired about certain emails Mr. Leech sent to himself. These emails are protected under the attorney work product doctrine insofar as Mr. Leech prepared them to memorialize thoughts relating to the Trade Allocation Matters (in anticipation of litigation relating to the Trade Allocation Matters) and forwarded them to himself or (intentionally or unintentionally) saved them as drafts for future reference. *See McKelvey v. DeJoy,* No. 20-CV-1591 (VLB), 2022 WL 2314610, at *5 (D. Conn. June 28, 2022) (work product protection is accorded to material prepared "'*by ...[a] party* or its representative'—not merely material prepared by or for an attorney" (emphasis added) (quoting Fed. R. Civ. P. 26(b)(3)(A))).

*Fourth,* you inquired about communications with Rollin Bush. Mr. Bush's designation as an attorney was the result of a misunderstanding on our part. Without prejudice to any objection to your Filter Team review process, we agree that communications between only Mr. Leech and Mr. Bush are not protected by the attorney-client privilege and do not object to the disclosure of the documents beginning with the following Bates numbers to the Prosecution Team: USAO_APPLE_01_00003119, USAO_GOOGLE_01_00000732, USAO_GOOGLE_01_00000733, USAO_GOOGLE_01_00002090, USAO_GOOGLE_01_00002128, USAO_GOOGLE_01_00002143, USAO_GOOGLE_01_00003720, USAO_GOOGLE_01_00003752, USAO_GOOGLE_01_00003753, USAO_GOOGLE_01_00048902, USAO_GOOGLE_01_00048927, and USAO_GOOGLE_01_00049003.[11] While not subject to

---

[11] Our agreement that these documents are not covered by the attorney-client privilege is without prejudice to our assertion of that privilege over confidential communications between Mr. Leech, Mr. Bush, and Mr. Leech's trusts and estates lawyers with respect to matters relating to Mr. Bush's service as the trustee of certain Leech family trusts.

In addition, our privilege log for the Apple Non-Priv and Google Non-Priv Sets erroneously lists Mr. Bush's name in the description of the document bearing Bates number USAO_APPLE_01_00001650, which is an attachment to a text message conversation between

Morvillo Abramowitz Grand Iason & Anello P. C.

Peter J. Davis, Esq.
Thomas Burnett, Esq.
April 7, 2025
Page 11

the attorney-client privilege, the email and attachment bearing Bates numbers USAO_APPLE_02_00000860 through USAO_APPLE_02_00000863 contain material that was prepared in anticipation of litigation and are protected by the work product doctrine (as designated in our privilege log). That protection was not waived by disclosure to Mr. Bush, Mr. Leech's "college roommate, life-long friend[,] [a]nd . . . administrator of the trusts for [Mr. Leech's] children." (Privilege Assertions Letter at 1 (quoting Transcript of Mr. Leech's U.S. Securities & Exchange Commission Deposition Testimony at 236–37)); *see Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 214 (S.D.N.Y. 2009) ("[W]ork product protection is waived only when documents are used in a manner contrary to the doctrine's purpose, when disclosure 'substantially increases the opportunity for potential adversaries to obtain the information.'" (quoting *Merrill Lynch & Co. v. Allegheny Energy, Inc.,* 229 F.R.D. 441, 445–46 (S.D.N.Y. 2004))); *Schanfield*, 258 F.R.D. at 216–17 (no waiver of work product protection when materials were disclosed to close relatives).

*Fifth*, with respect to your inquiries regarding emails sent by Mr. Leech to himself and documents designated "Non-Attorney Agent," the privilege logs produced on November 26 and December 20, 2024 include (1) a full list of all participants in the communication; (2) a description of any attachments; and (3) a particularized description of why the entirety of the document at issue is privileged for emails that Mr. Leech sent to himself and documents designated "Non-Attorney Agent." With respect to your request for a list of all participants in email or text message chains, we have already provided a list of all participants in each text message chain and in the top email of each email chain. We have not provided a list of all participants in the emails subsumed in each email chain because privilege logs need not "itemize each individual e-mail quoted in an e-mail string." *See Muro*, 250 F.R.D. at 363 (discussing Fed. R. Civ. P. 26(b)(5)). Additionally, because the metadata your Office has provided to us only identifies the participants in the top email, compliance with your request would require the manual re-review of hundreds of individual emails. Finally, the privilege logs we previously produced include descriptions of attachments and a basis for the assertion of the privilege for each document. Accordingly, we have complied with our obligations. To the extent you believe you are entitled to additional details regarding specific documents, please identify those documents so that we can evaluate your claim.

---

Mr. and Mrs. Leech. The inclusion of Mr. Bush's name in this description was inadvertent; the conversation (between Mr. and Mrs. Leech only) and its attachments are properly covered by the spousal privilege. By agreeing that the communications with Mr. Bush listed here are not covered by the attorney-client privilege, we do not change our privilege determination as to USAO_APPLE_01_00001650, which does not involve Mr. Bush.

Morvillo Abramowitz Grand Iason & Anello P. C.

Peter J. Davis, Esq.
Thomas Burnett, Esq.
April 7, 2025
Page 12

     Please let me know if you need revised privilege logs reflecting the updates to our privilege determinations with respect to Messrs. Dovetta and Bush.[12]

* * *

     If you have any questions, please do not hesitate to contact me or my colleagues.

Yours truly,

/s/ Jonathan S. Sack
Jonathan S. Sack

Enclosures
cc:    AUSA Molly Canick (via email with enclosures)

---

[12] The Privilege Assertions Letter also requests the basis of Mr. Leech's privilege assertion over a document marked as "GOOGLE_SW_00015610." No such document was produced to us in the course of this review, and thus no such document appears on the November 26 or December 20, 2024 privilege logs.