# Exhibit 11

# MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG
LISA ZORNBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

───────

WRITER'S CONTACT INFORMATION

jsack@maglaw.com
212-880-9410

July 2, 2025

COUNSEL
JOSHUA BUSSEN
PIPPA HYDE***

───────
RETIRED/PARTNER EMERITUS
PAUL R. GRAND

───────
ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN ENGLAND AND WALES

**By Email (peter.davis2@usdoj.gov & thomas.burnett@usdoj.gov)**

Peter J. Davis, Esq.
Thomas Burnett, Esq.
Assistant United States Attorneys
Southern District of New York
United States Department of Justice
26 Federal Plaza
New York, NY 10278

Re:     *United States v. Leech*, No. 24 Cr. 658 (GHW) (S.D.N.Y.)

Dear Peter and Tom:

We write in response to your June 11, 2025 letter regarding the Prosecution Team's review of search warrant returns for Apple and Google accounts associated with our client Ken Leech (respectively, the "Apple Returns" and the "Google Returns," and collectively, the "Returns").[1]  Based on your letters, it is clear that your Office's "taint team" process was ineffectual and that the Prosecution Team improperly accessed our client's privileged communications and confidential spousal communications.

To facilitate efficient presentation of this issue to the Court, please (1) identify any Materials from the Returns that you intend to offer at trial, either in the government's case in chief or its examination of defense witnesses, and (2) provide copies of (a) all emails and other communications between the Prosecution Team and the Taint Team relating to the Returns, (b) all documents reflecting the specific review protocols employed by the Taint Team, including in connection with the identification and handling of privileged and/or confidential materials, and

───────

[1] This letter employs the defined terms in the government's February 6, 2025 letter. Additionally, "Sept. 24, 2024 Def. Ltr." refers to Mr. Leech's letter dated September 24, 2024; "Feb. 6, 2025 Gov. Priv. Ltr." refers to the government's letter dated February 6, 2025 regarding Mr. Leech's privilege assertions; "April 7, 2025 Def. Ltr." refers to counsel's letter dated April 7, 2025; "June 11, 2025 Gov. Ltr." refers to the government's letter dated June 11, 2025.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

Peter J. Davis, Esq.
Thomas Burnett, Esq.
July 2, 2025
Page 2

(c) all records identifying any and all documents from the Returns to which the Prosecution Team had access, including the date on which the Prosecution Team obtained access to each document.[2]

## I.  Background

The government obtained search warrants for Mr. Leech's Apple and Google accounts on February 28, 2024.  You have informed us that your Office received the Google Returns in "early 2024," and that a Taint Team released the Google Returns to the Prosecution Team in April 2024 and the Apple Returns to the Prosecution Team in August 2024.  According to your most recent letter, on four separate occasions between April 19 and July 29, the Prosecution Team ceased its review of the Google Returns after recognizing that it had improperly been given access to privileged materials.  Your most recent letter describes similar breaches of Mr. Leech's privileged and confidential communications with respect to the Apple Returns: on three separate occasions between August 15 and September 6, the Prosecution Team ceased its review after recognizing that it had improperly been given access to privileged materials.

On September 24, 2024, at your request, we provided a list of individuals with whom Mr. Leech had communications covered by the attorney-client, spousal, and work-product privileges. We also informed you that Mr. Leech "occasionally sent emails from a personal email address to the same or a different personal email address in connection with privileged work with counsel in responding to an internal investigation being conducted at [Western]."  (Sept. 24, 2024 Def. Ltr. 1).  On November 4, you notified us that the government had obtained search warrants for the contents of Apple and Google accounts associated with Mr. Leech.

On February 6, 2025, the government provided certain details regarding its procedure for the review of the Returns and requested further information regarding Mr. Leech's privilege assertions.  We responded by letter dated April 6.  In that letter, we requested further details regarding the government's filter-review process and provided further support for our privilege assertions, including by enclosing the engagement letters for experts retained by counsel on Mr. Leech's behalf.

As discussed below, by letter dated June 11, you provided further details regarding the government's review of the Returns and requested additional information justifying the basis of Mr. Leech's privilege assertions.

---

[2] We find no meaningful distinction between documents "viewed" and "reviewed" by the Prosecution Team.  (June 11, 2025 Gov. Ltr. 6 n.5).

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

Peter J. Davis, Esq.
Thomas Burnett, Esq.
July 2, 2025
Page 3


**II.      The Government's Improper and Inexcusable Review of Privileged Materials**

Based on our representation of Mr. Leech and our review of the discovery provided to date, it is clear that, at the time you started reviewing the Returns, you knew that (1) in October of 2023, Western Asset Management Company ("Western") initiated an internal investigation into certain of Mr. Leech's trades and allocations for the Core, Core Plus, and Macro Opportunities strategies; (2) Western's internal investigation that was being conducted by lawyers at Munger, Tolles & Olson ("MTO"); (3) Mr. Leech had ceased trading and allocating securities for Core and Core Plus accounts by Monday, October 23, 2023 and therefore that any alleged misallocations had concluded by the end of October 2023; (4) starting in the fall of 2023, Mr. Leech was cooperating with both the MTO and SEC investigations; and (5) Mr. Leech, accompanied by counsel, testified before the SEC in Los Angeles, on March 6, 2024. Nonetheless, between April 2024 and September 2024, you reviewed Mr. Leech's personal emails without consulting counsel.

Exhibit A to your June 11 letter makes clear that you accessed emails with the subject lines "privilege" and "RFH Work Product,"[3] but your June 11 letter contends that it is "not clear" that the emails you accessed are privileged.[4] What is crystal clear is that when the Prosecution Team started reviewing the Returns in April 2024, you knew that Mr. Leech was represented by counsel and were overtly interviewing his colleagues at Western. Nonetheless, you chose not to confer with us to identify individuals who fall within the privilege before commencing your review of the Returns. Rather, you opted to review the Returns through a "taint team" process that gave you access to hundreds of privileged and/or confidential documents, including at least 83 emails between Mr. Leech and his wife,[5] and was so flawed that you needed to stop the

_____

[3] As you know, "RFH" refers to Ralph F. Hirschmann, Esq., our co-counsel to Mr. Leech in connection with the MTO investigation and the pre-charging phases of both the SEC and your Office's investigations.

[4] It is unclear how you can make this assertion given the documents listed on Exhibit A to your June 11 letter and your inability to identify emails from the Apple Returns that the Prosecution Team reviewed. To the extent you intend to persist in this position, please provide copies of your "records [that] indicate that the type of materials the Prosecution Team came across in the Apple Returns would fall into the same categories of materials that the Prosecution team viewed in the Apple Returns, including communications with non-attorneys claimed to be agents." (June 11, 2025 Gov. Ltr. 7).

[5] The protocol described in your letter makes clear that you expected that the Prosecution Team would encounter privileged materials in its review of Mr. Leech's personal accounts. (*See* June 11, 2025 Gov. Ltr. 5). You have cited no authority for the position that the government's investigation was permitted to review communications made pursuant to the spousal privilege

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Peter J. Davis, Esq.
Thomas Burnett, Esq.
July 2, 2025
Page 4


review process on seven separate occasions to give the "taint team" guidance.  Your continued review of the Returns after June 2024 is especially problematic:  by that time, we were scheduling the first of several in-person meetings and you knew that the "taint team" process you were employing had resulted in your having access to privileged materials that, on multiple occasions, necessitated pausing your review of the documents.

The authority cited in your letter does not establish that the government's use of the Taint Team to review the Returns was lawful.  Your June 11 letter acknowledges that, in certain circumstances where there is a high risk of the prosecution team reviewing privileged materials, courts have imposed higher burdens on the government.  (June 11, 2025 Gov. Ltr. 4).  Moreover, the fact that some courts approved the government's use of filter teams *before* the government accessed search warrant returns provides no refuge where, as here, the Prosecution Team deliberately accessed privileged documents.  (*Cf.* June 11, 2025 Gov. Ltr. 3-4 (quoting *In re Search Warrants Executed on April 28, 2021*, No. 21 Misc. 425 (JPO), 2021 WL 2188150 (S.D.N.Y. May 28, 2021))).  We have considerable concerns that the documents you viewed improperly informed and affected your investigation and continued work on the case.

### III.    Communications Between Mr. Leech and *Kovel* Experts Are Privileged

In your June 11 letter, you ask whether Mr. Leech "continues to assert privilege over all of the communications between the defendant and non-attorney agents, including those communications that do not involve his attorneys?  If so, please provide additional information to demonstrate that these communications meet the *Kovel* and *Ackert* standard."  (June 11, 2025 Gov. Ltr. 2).   We believe this question reflects a fundamental misunderstanding of the *Kovel* doctrine and misreading of the Second Circuit's decision in *Ackert*.

In *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961), the Court held that, in light of "the complexities of modern existence [that] prevent attorneys from effectively handling clients'

---

(June 11, 2025 Gov. Ltr. 3), and in fact there is authority directly to the contrary.  *See Matter of Search of Info. Associated with rickmaike@yahoo.com that is stored at premises controlled by YAHOO! Inc.*, No. 4:15-MJ-00042, 2020 WL 4373447, at *6 (W.D. Ky. July 10, 2020), *report and recommendation adopted sub nom. Matter of Search of Info. Associated with rickmaike@yahoo.com that is stored at premises controlled by Yahoo! Inc.*, No. 4:15-MJ-00042-HBB-JHM, 2020 WL 4369448 (W.D. Ky. July 30, 2020) (rejecting government's argument that spousal privilege "does not protect spousal communications from disclosure in an investigation").  Setting aside the legal ramifications of your intentional disregard of the spousal communication privilege, your Office's disregard of the sanctity of spousal communications is deeply troubling.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Peter J. Davis, Esq.
Thomas Burnett, Esq.
July 2, 2025
Page 5

affairs without the help of others," the attorney-client privilege "'must include all the persons who act as the attorney's agents,'" *id.* at 921 (quoting 8 Wigmore, Evidence, § 2301)). Judge Friendly described four unique scenarios in which "every element" of fundamental privilege principles are met:

> [W]e can see no significant difference between a [*first*] case where the attorney sends a client speaking a foreign language to an interpreter to make a literal translation of the client's story; a *second* where the attorney, himself having some little knowledge of the foreign tongue, has a more knowledgeable non-lawyer employee in the room to help out; a *third* where someone to perform that same function has been brought along by the client; and a *fourth* where the attorney, ignorant of the foreign language, sends the client to a non-lawyer proficient in it, with instructions to interview the client on the attorney's behalf and then render his own summary of the situation, perhaps drawing on his own knowledge in the process, so that the attorney can give the client proper legal advice.

*Id.* (emphasis added). Courts have since applied *Kovel* to communications involving accountants,[6] patent agents,[7] jury consultants,[8] bankruptcy advisors,[9] and psychiatrists.[10]

The Second Circuit's subsequent decision in *United States v. Ackert*, 169 F.3d 136 (2d Cir. 1999) was a straightforward application of *Kovel*—and did not announce any sort of new standard as your letter suggests. (June 11, 2025 Gov. Ltr. 2 (describing "the *Kovel* and *Ackert* standard")). In *Ackert*, Ackert (an investment banker) pitched an investment proposal to Paramount (the client). *Id.* at 138. Subsequently, Meyers (Paramount's attorney) contacted Ackert as part of Meyers's own independent research into the proposed transaction. *Id.* Paramount later executed the transaction through another investment bank. In connection with its examination of the transaction, the IRS summoned Ackert, and Paramount argued that his conversation with Meyers was covered by *Kovel*. Unsurprisingly, the Court summarily rejected Paramount's argument that Ackert's communications with Meyers were protected by privilege since:

---

[6] *Eglin Fed. Credit Union v. Cantor, Fitzgerald Sec. Corp.*, 91 F.R.D. 414, 418 (N.D. Ga. 1981).

[7] *Golden Trade v. Lee Apparel Co.*, 143 F.R.D. 514, 518 (S.D.N.Y. 1992).

[8] *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 659–60, 667–68 (3d Cir. 2003).

[9] *In re Tri-State Outdoor Media Grp., Inc.*, 283 B.R. 358, 362–64 (Bankr. M.D. Ga. 2002).

[10] *United States v. Alvarez*, 519 F.2d 1036, 1039, 1046 (3d Cir. 1975).

Morvillo Abramowitz Grand Iason & Anello P. C.

Peter J. Davis, Esq.
Thomas Burnett, Esq.
July 2, 2025
Page 6

> Meyers was not relying on Ackert to translate or interpret information given to Meyers by his client. Rather, Meyers sought out Ackert for information Paramount did not have about the proposed transaction and its tax consequences. Because Ackert's role was not as a translator or interpreter of client communications, the principle of *Kovel* does not shield his discussions with Meyers.

*Id.* at 140; *see also id.* at 139 (emphasizing that "*Kovel* recognized that an accountant can play a role analogous to an interpreter in helping the attorney understand financial information *passed to the attorney by the client*" (emphasis added)).[11]

Mr. Leech's post-October 20, 2023 communications with experts retained by his attorneys in connection with the preparation of his defense fall within the heartland of the first and third *Kovel* scenarios. Given the complexity of the case, which involves tens of thousands of trades for different fixed-income strategies executed during the historically volatile bear market of 2021 to 2023, it is precisely the type of case in which Judge Friendly observed that "the lawyer needs outside help." *Id.* at 922. Since October 2023, in the course of assisting counsel, experts retained by counsel have engaged in numerous privileged communications with Mr. Leech. Thus, Mr. Leech maintains his position that these communications are privileged.[12] Please have the Taint Team contact us with any specific questions or concerns your office has regarding our position.

**IV.    Mr. Leech's Draft Documents Prepared at the Direction of Counsel Are Privileged**

Your June 11 letter further disputes our assertion of attorney work product protection over emails that Mr. Leech sent to himself with thoughts relating to the MTO, SEC, and SDNY investigations. Again, your position is predicated on an incorrect view of the work product doctrine.

The work product doctrine "provides qualified protection for materials prepared by or *at the behest of counsel* in anticipation of litigation or for trial." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2003) (emphasis added). Specifically, the doctrine "protects not only work product by the attorney but also that by the client," *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1087 n.4 (N.D. Cal. 2002), and "affords

---

[11] Your letter cited: "*United States v. Trevor Milton*, No. 21 Cr. 478 (ER) (Sept. 8, 2022) (Tr. at 8)." The transcript you reference is not on the docket; please provide us with a copy.

[12] To the extent that Mr. Leech engaged in communications with his *Kovel* experts that do not implicate the *Kovel* privilege, we have not asserted privilege over those documents.

Morvillo Abramowitz Grand Iason & Anello P. C.

Peter J. Davis, Esq.
Thomas Burnett, Esq.
July 2, 2025
Page 7

protection to materials gathered by non-attorneys even where there was no involvement by an attorney," *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 492 (S.D.N.Y. 2019) (alteration adopted and citation omitted)).

Although the doctrine is most frequently asserted as a bar to discovery in civil litigation, the Supreme Court has characterized its "role in assuring the proper functioning of the criminal justice system" as "even more vital." *United States v. Nobles*, 422 U.S. 225, 238 (1975). As the Second Circuit has explained, the purpose of the doctrine is "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor,* 329 U.S. 495, 510-11 (1947)).

The documents at issue here are at the core of the work product doctrine. Where a party to litigation prepares a statement that is made "*because of* the prospect of litigation" under the governing *Adlman* standard, the statement is covered by the work product doctrine. *McKelvey v. DeJoy*, No. 3:20 Cv. 1591 (VLB), 2022 WL 2314610, at *4 (D. Conn. June 28, 2022) (quoting *Adlman*, 134 F.3d at 1202) (holding that statement made by a postal employee for counsel in response to allegations in the complaint was protected under work product privilege); *see also United States v. Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010) (Sentelle, *J.*) (inquiry does not turn on "who created the document . . . but whether the document contains work product—the thoughts and opinions of counsel developed in anticipation of litigation"). The documents at issue were drafted at the direction of counsel—and convey counsel's views as to potential responses to the ongoing investigations.[13] Additionally, in the context of the complex regulatory investigations, they were part of essential fact gathering so that Mr. Leech's counsel could provide him legal advice.

The authority you cite in your letter is inapposite. As our April 7 letter made clear, the documents at issue were not "[c]ontemporaneously created documents such as personal diaries or logs," *Swinton v. Livingston Cnty.*, No. 15 Cv. 00053A(F), 2016 WL 6248675, at *2 (W.D.N.Y. Oct. 26, 2016), and the Second Circuit's non-binding summary order in *Bice v. Robb*, 511 F. App'x 108 (2d Cir. 2013), is not controlling. In those cases, there was no indication that the communications involved a retained attorney whatsoever. *Swinton* is a prisoner civil rights case

---

[13] Mr. Leech maintains his assertion that certain Google search queries he performed in order to prepare drafts at the direction of counsel are privileged. Those particular queries are a small subset of queries found within the documents labeled USAO_GOOGLE_01_00040711 and USAO_GOOGLE_01_00000009. Electronic database "searches . . . conducted in anticipation of litigation" are privileged. *Burroughs Wellcome Co. v. Barr Lab'ys, Inc.*, 143 F.R.D. 611, 624 (E.D.N.C. 1992).

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

Peter J. Davis, Esq.
Thomas Burnett, Esq.
July 2, 2025
Page 8


in which the defendants sought "notes contemporaneously created by Plaintiff purporting to document some of Defendants' actions relevant to Plaintiff's claims." 2016 WL 6248675, at *1. Likewise, in *Bice*, the Circuit addressed the work product doctrine in a single sentence, and there was no indication that the documents at issue—emails between non-attorneys—were prepared at the direction of counsel. 511 F. App'x at 110. Mr. Leech maintains his assertion of privilege over the drafts at issue.

Please have the Taint Team contact us with any specific questions or concerns your office has regarding our position. We further note that some of the drafts Mr. Leech sent to himself include earlier correspondence with counsel.

* * *

We reiterate our request that you (1) identify any materials from the Returns that you intend to offer at trial, either in the government's case in chief or its examination of defense witnesses, and (2) provide copies of (a) all emails and other communications between the Prosecution Team and the Taint Team relating to the Returns, (b) all documents reflecting the specific review protocols employed by the Taint Team, including in connection with the identification and handling of privileged and/or confidential materials, and (c) all records identifying any and all documents from the Returns to which the Prosecution Team had access, including the date on which the Prosecution Team obtained access to each document.

If you have any questions, please do not hesitate to contact me or my colleagues.

Very truly yours,

/s/ *Jonathan S. Sack*
Jonathan S. Sack
Jeremy H. Temkin