```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
UNITED STATES OF AMERICA                    :    DECLARATION
                                            :
            - v. -                          :    24 Cr. 658 (GHW)
                                            :
S. KENNETH LEECH II,                        :
                                            :
            Defendant.                      :
                                            :
                                            :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

Peter J. Davis, pursuant to Title 28, United States Code, Section 1746, declares under penalty of perjury as follows:

1.      I am an Assistant United States Attorney in the Office of Jay Clayton, United States Attorney for the Southern District of New York. I am one of the Assistant United States Attorneys on the team responsible for the investigation and prosecution of defendant S. Kenneth Leech II (the "Case Team"). I make this declaration in response to the Court's November 7, 2025 order seeking to "take evidence from the Government regarding the efforts used by the Government to avoid disclosure of privileged materials to the prosecution team, including the methodology deployed by the filter team to screen documents." (11/7/25 Tr. at 100.)

2.      This declaration is my best recollection and is based on my personal knowledge, as well as my review of emails and calendar appointments related to this matter, and conversations with members of the Case Team and the filter team. Because this declaration is being submitted for the purpose of addressing the Court's request for information regarding the filter review process, it does not include every detail of my involvement in this matter. Where the contents of documents and the actions, statements, and conversations of others are described below, they are described in substance and in part.

1

3. In or about February 2024, the Honorable Stewart D. Aaron issued a warrant authorizing searches of the defendant's email and cloud storage accounts maintained by Google and Apple. The warrants were sought under seal as, at that time, the U.S. Attorney's Office had not publicly disclosed the existence of the investigation and had not contacted the defendant or his counsel directly.

## The Google Data

4. In or around March 2024, I was informed that we had received the warrant returns from Google (the "Google Data"). Because I was aware that the defendant was represented by counsel in connection with a related investigation by the Enforcement Division of the Securities and Exchange Commission and Western Asset Management Company, in or around March 2024, I requested that a filter team (the "Filter Team") review the Google Data for any potentially privileged material and to segregate that material from the prosecutors and agents handling the criminal investigation into Leech's trading (the "Case Team") before the Case Team reviewed the data. To assist the Filter Team in identifying and segregating potentially privileged materials, I compiled a list of law firms and lawyers who the I understood represented the defendant, Western Asset Management Company, or were involved in the internal investigation conducted by Western Asset Management Company. I emailed this list to AUSA Molly Canick of the Filter Team on or about March 12, 2024.

5. In or about April 2024, material from the Google Data that the Filter Team had not identified as potentially privileged was released to the Case Team. This data was provided to the Case Team on the document review platform Relativity. I started my review of the Google Data on or about April 18, 2024. During my review that day, I encountered material that appeared to be potentially privileged and stopped my review. To document what I had done, I wrote the following

email to file: "Our privilege team released non-privileged documents from this warrant review to the prosecution team. I started my review of the non-privileged material today, April 18, 2024. I saw correspondence that suggested that Leech was consulting with an expert on the subject matter of this investigation. No attorneys were on the correspondence as far as I could tell. I stopped my review and I instructed the agents to stop their review. I spoke with my supervisor and we decided we will raise with Molly Canick (from the privilege team) and decide next steps." I raised this issue with AUSA Canick.

6. On or about April 19, 2024, AUSA Canick emailed me about her review, which provided high-level descriptions of the subject matter and rationale for segregating documents from the Case Team: "I ran the OPPS and Core Plus searches. I didn't find any emails that included an individual who could have been an expert. Almost all of these hits are emails from Ken Leech to himself (he has several email accounts). These are notes about trading. They could be notes that he is taking to record his recollections or actions in light of the SEC investigation. 8 of them have a subject 'privilege'. But there are 95 total that are very similar (and often duplicative). The others have either no subject or a dated subject like "July note". I've tagged all 95 as potentially privileged for now and made the request to segregate them. That will probably be done on Monday morning."

7. When I resumed my review, and to assist the Filter Team in locating and segregating documents that could be potentially privileged, on or about April 23, 2024, I marked messages as potentially privileged, alerted AUSA Canick, and halted my review. I emailed AUSA Canick to document what I had done: "Per our discussion, I marked an email potentially privileged as well as an email to 'Dexter Senft.' Can you please segregate these when you have a moment and take a look?" and "Also, I marked a handful of these for your review without reviewing the substance. I'll pause my review until we can discuss. Thank you again!"

3

8. On or about April 25, 2024, AUSA Canick emailed, in substance and in part, that she had made the request to segregate 84 files as potentially privileged because they may include an expert retained by counsel. AUSA Canick listed the potential experts as Dexter Senft, Autumn Soukup, and Dennis McNamara and added these individuals to the Filter Team's privilege list. AUSA Canick emailed, in substance and in part, "All of the communications with these three individuals will be segregated, except for clearly non-privileged communications with Dexter Senft with whom Ken Leech plays bridge. Please note that all of the communications with Soukup also include Senft." AUSA Canick emailed, in substance and in part, that we could confirm that these were in fact expert witnesses retained by counsel by asking for documentary support from defense counsel.

9. I subsequently resumed my review. On or about May 14, 2024, I encountered an additional potentially privileged record. I halted my review and emailed AUSA Canick, in substance and in part, "On the gmail return, I am marking PP [potentially privileged] the following document, which looks like there is an attachment from Dexter Senft (I have not reviewed it of course)." AUSA Canick emailed, in substance and in part, that the document was a note from Eileen Leech to Dexter Senft, that it could be work product, that there were two copies, and that she had made the request to segregate them from the Case Team.

### iCloud Data

10. On or about April 29, 2024, the Case Team requested review of iCloud data from the defendant (the "iCloud Data") for any potentially privileged material. To facilitate the filter review, I emailed AUSA Canick, in substance and in part, that the iCloud Data was for the same case as the Google Data, and I attached the privilege screening list. I noted that the list "includes segregating any potential expert materials as discussed."

4

11. On or about August 5th and 8th, 2024, material from the iCloud Data that the Filter Team had not identified as potentially privileged was identified for an FBI examiner so that the examiner could generate Cellebrite reports containing non-privileged materials and then load them to a drive for the Case Team to review. Based on my review of emails, the FBI examiner created those non-privileged reports and loaded them onto a drive on or about August 9, 2024 and I received a copy of the drive on August 9, 2024. Based on my review of my calendar, on August 9, 2024, I participated in a witness interview that began at or about 10:30 a.m. On August 9, 2024 at approximately 3:07 p.m., I emailed AUSA Canick, in substance and in part, "I see there are chats on the icloud report with Dexter Senft. Were those supposed to be screened as potentially privileged given he is listed as a potential expert? I have stopped reviewing and [Special Agent Thomas Kovacs] please hold off until we solve this."

12. On or about August 12, 2024, the Filter Team segregated additional material and identified material from the iCloud Data that the Filter Team had not identified as potentially privileged for an FBI examiner so that the examiner could generate new Cellebrite reports containing non-privileged materials and then load them to a drive for the Case Team to review. Based on my review of emails, the FBI examiner made the new Cellebrite reports and copied them to a drive for pick up on or about August 15, 2024, at approximately 3:46 p.m.

13. After receiving and opening the Filter Team's iCloud Data production, the Case Team and I commenced our review. On or about August 15, 2024, I saw a folder structure that suggested the presence of a potentially privileged record, but did not review the record and halted my review. That same day, at approximately 5:47 p.m., I emailed AUSA Canick (and others), "All, I'm stopping review again. In the below folder I saw a file path that said privileged from Ralph [Hirschmann]. I did not review the document, but it appears there is still privileged materials in

5

these reports. Can we please discuss tomorrow?" To assist the Filter Team in identifying which of the reports I was referring to in my email I attached a screenshot showing identifying the particular report. While the Filter Team worked on identifying that file path and conducting a further review, the Filter Team released non-privileged messaging reports from the iCloud Data via a USAfx platform on or about August 16, 2024. I do not remember whether I was able to conduct a review of these files or whether technical issues prevented me from opening the files at that time.

14. The Filter Team segregated additional material and identified material from the iCloud Data that the Filter Team had not identified as potentially privileged so that new Cellebrite reports containing non-privileged materials could be loaded to a drive for the Case Team to review. Based on my review of emails, on or about August 23, 2024, I picked up my drive with these further-screened materials.

15. On or about August 28, 2024, Special Agent Kovacs emailed the Filter Team concerning a potentially privileged document in the iCloud Data. On or about August 29, 2024, following the agent's message, the Filter Team segregated additional material and identified material from the iCloud Data that the Filter Team had not identified as potentially privileged so that new Cellebrite reports containing non-privileged materials could be loaded to a drive for the Case Team to review.

16. On or about August 30, 2024, AUSA Burnett emailed the Filter Team, asking the Filter Team to review a set of emails in the iCloud Data for potential privilege. AUSA Burnett emailed the Filter Team, in substance and in part, that the emails did not appear to be to or from lawyers, but nonetheless asked the Filter Team to review them out of an abundance of caution. Based on my discussions with AUSA Burnett, I have learned, in substance and in part, that AUSA Burnett observed an email between Mr. Leech and a non-lawyer, Rollin Bush, which had an

attachment titled, in substance and in part, "Thoughts on the Offense"; AUSA Burnett reviewed the first sentence or two of the attachment, which suggested it may be related to the investigation, and then stopped his review.

17. On or about September 9, 2024, I emailed Mr. Leech's counsel to obtain from them a list of persons with whom the defendant may have had privileged correspondence. Defense counsel responded with their list on or about September 24, 2024.

18. As discussed above, on multiple occasions during my review of the iCloud and Google Data, I stopped my review and flagged for the Filter Team material that could be potentially privileged. I did this to avoid the Case Team being exposed to any potentially privileged material and, to that end, when I identified material that I thought could be potentially privileged, I tried to avoid reviewing the substance of any communication or document.

Dated: New York, New York
        January 21, 2026

By: *Peter J. Davis*

Peter J. Davis
Assistant United States Attorney
26 Federal Plaza
New York, New York 10278
(212) 637-2468