# CLEARY GOTTLIEB STEEN & HAMILTON LLP

**AMERICAS**
NEW YORK
SAN FRANCISCO
SÃO PAULO
SILICON VALLEY
WASHINGTON, D.C.

**ASIA**
HONG KONG
SEOUL

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com


D: +1 212 225 2000
jkim@cgsh.com

**EUROPE & MIDDLE EAST**
ABU DHABI
BRUSSELS
COLOGNE
LONDON
MILAN
PARIS
ROME

May 28, 2026

**VIA ECF**

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street, Room 2260
New York, New York 10007

Re:    *United States v. Leech,* No. 24 Cr. 658 (GHW)

Dear Judge Woods:

We write in response to the government's May 25, 2026 motion for a pretrial hearing under Federal Rule of Evidence 104(a) and 104(c)(3) (Dkt. 159, the "Gov't Mot."), and the Court's May 27, 2026 order (Dkt. 163) granting the government's motion and scheduling a hearing on June 1, 2026.  We raise the following issues in advance of the hearing and in connection with any ultimate ruling the Court may make on the admissibility of any specific statements.

First, the government seeks two separate categories of evidentiary rulings for each of Trading Assistant-1 and Operations Manager-1:[1] (1) "the existence of an agency relationship" between the defendant and each of them, and (2) "that certain communications the Government intends to offer were within the scope of that agency relationship."  (Gov't Mot. at 1).  Although determinations as to the existence of an agency relationship could potentially be made based on testimony at the hearing,[2] the questions of whether specific communications are "within the

---

[1]  For consistency of terminology, we refer to the two Western Asset Management Company ("Western") employees as "Trading Assistant-1" and "Operations Manager-1," the terms used in the government's initial *in limine* motion.  (*See* Dkt. 60).  In its more recent motion, the government refers to them collectively as "the defendant's trading assistants."  (Gov't Mot. at 1, 3, 11).  That is incorrect.  Operations Manager-1 was at all relevant times the Manager of Trading Operations and Trading Assistant-1's supervisor.

[2]  For the reasons set forth in the defense's response to government's motion *in limine*, the government has not established—nor will it be able to establish at the hearing—agency relationships with Mr. Leech legally sufficient to admit these individuals' statements under Rule 801(d)(2)(D) under the relevant standard.  (*See* Dkt. 74 at 16–26).  Neither reported directly to Mr. Leech, and both worked several levels below him in the corporate hierarchy.  Neither was "answerable and directly responsible" to Mr. Leech as the law requires.  *United States v. Rioux*, 97 F.3d 648, 660 (2d Cir. 1996).  We will not reargue the merits here, but expect that the evidence at the hearing will

Cleary Gottlieb Steen & Hamilton LLP or an affiliated entity has an office in each of the locations listed above.

Hon. Gregory H. Woods, p.2

scope of that agency relationship" must ultimately be made on a statement-by-statement basis, taking into account the full context around each exhibit, including testimony at trial from the declarant-witnesses relating to such statements. *See Zaken v. Boerer*, 964 F.2d 1319, 1323 (2d Cir. 1992) ("We examine therefore *each statement* testified to . . . to determine whether the requisite relationship existed between the declarant and [defendant] *to make the statement admissible* against [defendant] in her individual capacity." (emphases added)). The Court has recognized the need to address the issue statement-by-statement (as opposed to in a categorical way as the government suggested), in directing the parties to submit a spreadsheet broken down by individual statements, with the alleged agent identified along with the asserted bases for admissibility and the parties' respective positions. (Dkt. 163). Although the parties can present their positions on each statement based on the underlying documents themselves and the general testimony elicited at the hearing, the ultimate determination as to admissibility of any specific statement should be informed by the declarant-witness' testimony and other trial evidence at the time the specific exhibit is offered.[3] Courts in this District and others adopt this approach in making Rule 801(d)(2)(D) determinations. *See, e.g.*, Transcript of Hearing at 12, *Sec. & Exch. Comm'n v. Wyly*, 56 F. Supp. 3d 394 (S.D.N.Y. 2014) (No. 10 Civ. 5760), Dkt. 258 ("I will reserve rulings on the scope and relevancy of particular statements [sought to be admitted under Rule 801(d)(2)(D)] until they are offered."); *Leser v. U.S. Bank Nat'l Ass'n*, No. 09 Civ. 2362, 2012 WL 6738402, at *5 (E.D.N.Y. Dec. 29, 2012) ("[T]he Court will reserve its ruling on whether defendant's proposed exhibits . . . should be admitted under Fed. R. Evid. 801(d)(2), or any other rule of evidence, until the relevant witnesses testify and the appropriate foundation is laid.").

For example, when questioned about a specific statement being offered, Trading Assistant-1 or Operations Manager-1 may not recall making the statement at all, may recall facts surrounding the statement that impact its meaning, or may recall circumstances that make the statements reflected in the documents proffered by the government misleading or inaccurate when presented out of context. None of that can be known without hearing the testimony about each specific statement and the context in which the exhibit is being offered at trial. Such testimony could impact the determination as to whether the statement is properly within the scope of any agency relationship that has been established or otherwise affect admissibility for other reasons. Thus, although a view could be reached as to whether an agency relationship existed as to each witness based on the pre-trial hearing, and if such an agency relationship is established, a preliminary view of the types of communications that could potentially fall within the scope of that agency could be presented, ultimate rulings as to admissibility of specific statements must await the evidence at trial and the laying of a proper foundation.

---

confirm the lack of an agency relationship required to attribute statements of one company employee against another employee under Rule 801(d)(2)(D) at his criminal trial.

[3] The government has proposed a hearing that it anticipates taking approximately half a day, including cross-examination, in which the government will "highlight only selected exhibits that will assist the presentation of the witnesses' hearing testimony." (Dkt. 161). The government does not anticipate asking the witnesses about each of the exhibits it seeks to introduce during the hearing. (*Id.*). But the burden remains with the government to establish the relevance and admissibility of each exhibit that it will offer as evidence at trial. *See Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987) ("[T]he offering party must prove [preliminary facts relevant to admissibility] by a preponderance of evidence.").

Hon. Gregory H. Woods, p.3

This is particularly important here, as admission of statements under Rule 801(d)(2)(D) as authorized agent statements must be done with caution in the criminal context where one employee's statements are being offered as agent statements made on behalf of another employee. *See* Mueller & Kirkpatrick, *Federal Evidence* § 8:53 (4th ed. 2025) (cautioning that in criminal cases "the terms 'employee' and 'agent' should be construed more strictly than in civil cases" for the purposes of admitting statements under 801(d)(2)(D)). As the Court recognized in its prior ruling, the Second Circuit decisions that have "encouraged 'liberal admissibility of this sort of proof'" apply to the different context of employees' statements attributed to their company employer. (Apr. 27, 2026 Hr'g Tr. at 15, Dkt. 148 (quoting *Pappas v. Middle Earth Condo. Assn*, 963 F.2d 534, 537 (2d Cir. 1992))).[4]

Second, in addition to laying a proper foundation of relevance and admissibility, each specific statement's probative value (if any) must be weighed against the risks of unfair prejudice, confusion of the issues, misleading the jury, undue delay or cumulative evidence as set forth in Rule 403. The probative value offered for many of these statements is purportedly to establish that there was a delay in Mr. Leech's allocation of trades. But putting aside whether these statements satisfy Rule 801(d)(2)(D), these communications are plainly an unfairly prejudicial, confusing, and cumulative way to establish the delay. The risks addressed by Rule 403 are particularly high here where many of the proposed statements, on a limited number of days over an almost three-year period, appear to have been selected largely because they reflect the witnesses complaining about how factors, including but not limited to the timing of Mr. Leech's allocations, led to personal inconveniences, including keeping them at work later than they desired, or before weekends and vacations. *See, e.g.*, GX 1106-102 (Operations Manager-1: "Friday was HELL! Called me at 12:45pm"); GX 1106-47 (Trading Assistant-1: "[Mr. Leech] was really busy the couple days before I went out on vacation, sorry it continued for you . . ."); GX 1106-117 (Operations Manager-1: "Ok. You gotta give him some grief for this."). Weighing the probative value of these types of communications, if any, against the Rule 403 risks cannot be done in broad categorical ways outside the context of the specific statements and the witnesses' testimony about each.

Third, the government presents alternative bases for admitting certain of the exhibits, including potentially as "present sense impressions" under Rule 803(1) or "intent," "plan" and "mental feeling," under Rule 803(3). These alternative bases for admissions also require individualized analyses, as well as an assessment of the full and proper context. Without the context from witness testimony that sets forth (or fails to set forth) the proper foundation for each statement, it will be challenging to determine whether a communication actually reflects a "present sense impression" or a "contemporaneous intent or plan." The government appears to recognize the need for such individualized factual analysis by arguing that in some cases a "slight lapse" in time might not disqualify a statement from being admitted as a present sense impression. (Gov't Mot. at 9). But whether a delay is sufficiently "slight" to permit introduction as a "present sense impression" cannot be made without understanding the statement and the

---

[4] Importantly, the government has not represented that it will be calling Trading Assistant-1 and Operations Manager-1 as witnesses at trial. If they are not called as witnesses by the government, and the government seeks to introduce these numerous prior statements without any context from the witnesses, the defense also objects for the additional reasons of failure to establish foundation and relevance, as well as being unfairly prejudicial and confusing the jury under Rule 403.

Hon. Gregory H. Woods, p.4

circumstances around it.  Similarly, the government does not explain how the emotional state and mental feeling of the witnesses (as opposed to the defendant) is relevant to any issues in this case.  To the extent it has any relevance, it would be so marginal that the probative value of the types of prejudicial statements the government seeks to introduce must be weighed on a statement-by-statement basis.

Fourth, as noted above and in the defense's response to the government's initial motion *in limine*, many of the statements the government seeks to introduce amount to office banter between Trading Assistant-1 and Operations Manager-1, including complaining about delayed allocations from Mr. Leech, delayed confirmations from brokers, or the need to work late.  These types of exchanges cannot, as a matter of law or logic, be attributed to Mr. Leech under any reasonable "agency" theory.  Under the government's theory, the witnesses are gossiping and complaining about Mr. Leech *on his behalf*, as his agent.  Not surprisingly, the only criminal authority on which the government relies for this proposition, *United States v. Lauersen*, does not support it at all.  In *Lauersen*, the district court admitted through the testimony of a patient one specific statement that a nurse at a doctor's office made to the patient saying that the office had destroyed the patient's files after the doctor's office was tipped off that the files would be confiscated.  The court admitted the statement as either an agent's statement under Rule 801(d)(2)(D) or as a co-conspirator statement under Rule 801(d)(2)(E).  *United States v. Lauersen*, 348 F.3d 329, 340 (2d Cir. 2003).  *Lauersen* in no way supports the view that Rule 801(d)(2)(D) permits the type of statements the government seeks to introduce here.  Nor does it address the Rule 403 risks that such communications plainly raise.

\*     \*     \*

For the foregoing reasons, we respectfully submit that, although the determination of whether an agency relationship existed between the defendant and either Trading Assistant-1 or Operations Manager-1 for purposes of Rule 801(d)(2)(D) can be made following the pre-trial hearing, and if any such finding of an agency relationship is made, preliminary positions on statements can be presented, ultimate rulings as to the admissibility of specific statements must await trial for the laying of a proper foundation and for admissibility determinations based on the full context and testimony through which the statements are offered.

Respectfully submitted,

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

*/s/ Joon H. Kim*
Joon H. Kim
Mitchell Kohles
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Hon. Gregory H. Woods, p.5

MORVILLO ABRAMOWITZ
GRAND IASON & ANELLO, P.C.

*/s/ Jonathan S. Sack*
Jonathan S. Sack
Jeremy H. Temkin
Joshua Bussen
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

*Attorneys for Defendant S. Kenneth Leech II*

Cc:    AUSA Peter J. Davis (via ECF)
       AUSA Thomas S. Burnett (via ECF)
       SAUSA Lindsey Keenan (via ECF)