

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

May 28, 2026

**BY ECF**

Hon. Gregory H. Woods
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 2260
New York, NY 10007

      Re:     <u>United States</u> v. <u>S. Kenneth Leech II</u>, 24 Cr. 658 (GHW)

Dear Judge Woods:

The Government writes in further support of its motion to compel disclosure of material responsive to defense Rule 17(c) subpoenas (the "Subpoenas"), and to quash the Subpoenas to the extent any witness has not yet completed production of responsive material.

The defendant's argument that the Government lacks standing is without merit. As a party to this case, and because the defendant moved for Rule 17(c) subpoenas, the Government has standing to oppose the Subpoenas. *See United States v. Nektalov*, No. 03 Cr. 828 (PKL), 2004 WL 1574721, at *1 (S.D.N.Y. July 14, 2004).  The Government's challenge is particularly appropriate because the Government has a legitimate interest in preventing the harassment of witnesses it intends to call at trial. Given their breadth and scope, the Subpoenas clearly constitute a generalized discovery device to collect material that can serve no permissible purpose at trial.

The Subpoenas seek documents and communications spanning many years from two anticipated Government witnesses, Witness-1 and Witness-2, as well as a friend and professional acquaintance of Witness-2 ("Witness-3").[1] The Government's interest in preventing the undue harassment of anticipated witnesses is legitimate and substantial, particularly as here where the subpoena recipients are private parties rather than corporate entities with resources and infrastructure to respond to legal process. *See United States v. Cole*, No. 19 Cr. 869 (ER), 2021 WL 912425, at *2 (S.D.N.Y. Mar. 10, 2021) ("Preventing the undue harassment of a cooperating witness is a legitimate governmental interest giving rise to standing in this context . . . ." (citations omitted)); *United States v. Giampa*, No. S 92 CR. 437 (PKL), 1992 WL 296440, at *1 (S.D.N.Y. Oct. 7, 1992) ("these considerations support the conclusion that the Government has standing to move to quash defendant Giampa's Rule 17(c) subpoenas seeking a variety of financially related documents from the potential witness").

---

[1] Witness-3 is not an anticipated Government witness.

In any event, the Court can resolve the propriety of a Rule 17 subpoena on the Government's motion even if the Government lacks standing because Witness-2's motion to quash the subpoena is before the Court, because Witness-3 has produced responsive communications to which the Government has a reciprocal discovery right, and "because it is the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements of Rule 17(c)." *United States v. Weissman*, No. 01 Cr. 529 (BSJ), 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002).

The defendant's argument that the Subpoenas satisfy the strict standard set forth in *United States v. Nixon*, 418 U.S. 683 (1974), also is without merit.[2] The Subpoenas bear the hallmarks of an improper fishing expedition. The instruction applicable to Requests 1 and 2 to provide "all" documents and "all" communications concerning multiple subjects, rather than specific, articulated documents and communications demonstrates that the Subpoenas were designed as a broad discovery device. *See, e.g., United States v. Weisberg*, No. 08 Cr. 347 (NGG), 2011 WL 1327689, at *6 (E.D.N.Y. Apr. 5, 2011) ("In other words, Weisberg demands all documents and material in any way relating to the Escrow Account. This request is insufficiently focused on documents that will be relevant to Weisberg's defense, and Weisberg further fails to demonstrate that responsive documents would be admissible."); *United States. v. Weisberg*, 2010 WL 5027537 (E.D.N.Y. Dec. 3, 2010) at *1 (quashing subpoena requests that were "phrased in language that resembles civil discovery request[s], rather than specific requests for actual evidence"); *United States v. Barnes*, No. S904 Cr. 186 (SCR), 2008 WL 9359654 (S.D.N.Y. Apr. 2, 2008) at *4 (quashing subpoena requests for "all documents" because seeking "such a broad swath of items indicates that the subpoena was intended as a discovery device rather than as a mechanism for obtaining specific admissible evidence"); *United States v. Louis*, No. 04 Cr. 203 (LTS), 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005) (quashing subpoena requesting documents "relating to several categories of subject matter (some of them quite large), rather than specific evidentiary items");*United States v. Chen De Yian*, No. 94 Cr. 719 (DLC), 1995 WL 614563, at *2 (S.D.N.Y. Oct. 19, 1995) ("In calling for 'all records, including ... documents, memoranda, reports, notes ... pertaining to' the deaths, the subpoena was not crafted to call for admissible evidence. Rather, it called for the production of the entire investigative file and is accurately described as a fishing expedition.").

Here, the defendant cannot possibly meet his burden of showing the Subpoenas' broad requests will result in the production of relevant, admissible evidence. *See United States v. Kwok*, 2024 WL 1719364 (AT), at *4 (S.D.N.Y. Apr. 22, 2024) ("To comply with Rule 17 and *Nixon*, a subpoena must be sufficiently specific to avoid being a fishing expedition premised on a mere hope that something useful will turn up." (citation omitted)); *see also United States* v. *Shestakov*, 2025 WL 507523 (JHR), at *2 (S.D.N.Y. Feb. 14, 2025) (the subpoena "must 'constitute[] a good

---

[2] The defendant's argument that a growing number of Courts in the Second Circuit have expressed doubt about the *Nixon* standard is overstated. *See United States v. Skelos*, No. 15 Cr. 317 (KMW) 2018 WL 2254538, at *1 (S.D.N.Y. May 17, 2018) ("courts in the Second Circuit have almost unanimously applied *Nixon* to subpoenas served on third-parties"). Similarly, the defendant's argument that the Advisory Committee on Criminal Rules has approved a proposed amendment is misplaced – until the Supreme Court promulgates a revised rule a proposal is just a proposal.

2

faith effort to obtain identified evidence rather than a general 'fishing expedition' that attempts to use the rule as a discovery device'" (citations omitted)).

For example, Request 1(a), for "all" documents and communications concerning the defendant's trading and allocations for a six year period is likely to encompass a large volume of material that will constitute inadmissible hearsay, including, for example, because in their capacity as Western Asset employees, Witness-1 and Witness-2 are likely to have received countless communications from others concerning the defendant's trading. Request 1(b) seems plainly designed to obtain prior statements of witnesses, which Rule 17 does not permit. *See* Fed. R. Crim. P. 17(h). Similarly, it is self-evident that analyses shared with the Government, and communications between Witness-1, Witness-2, and the Government, are already in the possession of the Government. Rule 17(c) subpoenas may not be used to obtain material otherwise procurable in advance of trial by the exercise of due diligence. *See United States v. Bergstein*, No. 16 Cr. 746 (PKC), 2017 WL 6887596, at *5 (S.D.N.Y. Dec. 28, 2017) ("When 'many' of the subpoenaed materials are obtainable through the discovery process, a subpoena contravenes *Nixon*'s requirement that subpoenaed materials must not be otherwise procurable in advance of trial by the exercise of due diligence."); *Boyle*, 2009 WL 484436, at *3 (quashing a 17(c) subpoena where it was "likely that many of the documents that defendant seeks in his subpoena are obtainable from another source—the United States Attorney's Office—with little or no diligence required"). Like Request 1(a), Request 1(c), for "all" communications among witnesses concerning the defendant for a six-year period, is likely to result in the production of a large volume of inadmissible hearsay. Contrary to the defendant's generalized assertion, not every communication concerning the defendant will qualify as a present sense impression, recorded recollection, or statement of then existing state of mind. Demanding six years of communications in the hopes that some subset of those communications will fit hearsay *exceptions* is not a permitted use of a Rule 17(c) subpoena.

Lastly, Request 2 is a barely veiled request for impeachment material. The defendant's argument that Rule 17(c) subpoenas returnable at the time of trial may be used to obtain impeachment material is not accurate.[3] Regardless of return date, Rule 17(c) subpoenas must satisfy the *Nixon* standard. Requests seeking impeachment material simply do not meet that standard. *See, e.g.*, *United States v. Percoco*, No. 16 Cr. 776 (VEC), 2018 WL 9539131, at *2 (S.D.N.Y. June 14, 2018) (collecting cases) (On a motion to quash, "trial subpoenas," including "for impeachment material," are subject to the same standard as pretrial subpoenas."); *United States v. Binday*, 908 F. Supp. 2d 485, 492 (S.D.N.Y. 2012) ("[A] proposed subpoena does not satisfy the *Nixon* three-pronged test if it seeks material that could be used at trial only to impeach a witness."); *Weissman*, 2002 WL 31875410, at *1 ("[S]everal cases articulate an absolute prohibition on the use of a Rule 17(c) subpoena solely for impeachment purposes."); *United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y 1995) ("Rule 17(c) . . . preclude[s] production of materials whose evidentiary use is limited to impeachment.").

Far from trying to quash a subpoena seeking impeachment material in the Government's possession, the Government's April 22, 2026, motion (Dkt. No. 132) was intended to prevent the defendant from using Rule 17(c) practice to subvert Court-ordered deadlines and put private parties

---

[3] Even if it were accurate, it is irrelevant, because the subpoenas issued to Witness-1, Witness-2, and Witness-3 were returnable six weeks before the originally scheduled trial date.

to the burden of production to boot. The Government's motion preceded the Court-ordered deadlines for the production of material covered by 18 U.S.C. § 3500 and *Giglio v. United States*, 405 U.S. 150 (1972). Since that motion, and consistent with the Court's order, the Government produced Section 3500 and *Giglio* material for Witness-1 and Witness-2. The assertion that the Government may yet be remaining "willfully ignorant to key impeachment material" is baseless and should not be countenanced.

***

For the foregoing reasons, and the reasons set forth in the Government's April 22, 2026, and April 29, 2026, letters, the defense Rule 17(c) subpoenas should be quashed, and the Court should order the defense to produce all 17(c) subpoena returns promptly.

Respectfully submitted,

SEAN BUCKLEY
Attorney for the Government

by: __*/s/*_____
Thomas Burnett/Peter Davis
Assistant United States Attorneys

Lindsey Keenan
Special Assistant United States Attorney
(212) 637-2468/1064/6523

cc: Counsel (by ECF)

4