

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

May 31, 2026

**BY ECF**

Hon. Gregory H. Woods
Southern District of New York
500 Pearl Street
New York, NY 10007

  **Re:  United States v. S. Kenneth Leech II, 24 Cr. 658 (GHW)**

Dear Judge Woods:

  The Government respectfully writes in advance of the Rule 104 hearing and in response to the defendant's May 28, 2026 letter (ECF No. 165.) The defendant's procedural objections are contradicted by the rules of evidence, which permit the Court to make preliminary rulings on the admissibility of evidence in exactly the manner the Court has Ordered. The defendant's categorical objections to the admissibility of proposed statements also conflate different rules of evidence and fail on the merits.

  *First*, Rule 104(a) instructs that the "Court must decide any preliminary question about whether . . . evidence is admissible" and, "[i]n so deciding, the court is not bound by evidence rules except those on privilege." Defendant concedes that the question of whether an agency relationship exists "could potentially be made based on testimony at the hearing," and that the "Court has recognized the need to address the issue statement-by-statement." (ECF No. 165 at 2.) Nonetheless, the defendant claims that the "ultimate" determination must wait until the evidence is offered at trial. (*Id.*) That is not what Rule 104 provides. That is not even what the defendant's cited cases say. In *Leser v. U.S. Bank Nat. Ass'n*, 2012 WL 6738402, at *3-5 (E.D.N.Y. Dec. 29, 2012), the Court reserved ruling on the admissibility under Rule 801(d)(2) until "the relevant witnesses testify and the appropriate foundation is laid." Here, the relevant witnesses are testifying at the Rule 104 hearing to lay the foundation for these documents' admissibility.[1]

  Defendant posits that the witnesses "may not recall making the statement at all, may recall facts surrounding the statement that impact its meaning, or may recall circumstances that make the

---

[1] Defendant also cites to the district court's oral rulings on motions *in limine* in *Sec. & Exch. Comm'n v. Wyly*, 56 F. Supp. 3d 394 (S.D.N.Y. 2014) (No. 10 Civ. 5760), Dkt. 258. In that hearing, the Court noted that "defendants concede[d] that most of these individuals were agents or employees at some point in time but dispute that every statement these individuals made during that time period was within the scope of their agency." *Id.* at 12. The Court did not order a preliminary hearing under Rule 104, but instead reserved rulings until the statements were offered at trial. *Id.* Here, the Court has ordered a pretrial evidentiary hearing to determine admissibility of each statement under Rule 104.

statements reflected in the documents proffered by the government misleading or inaccurate when presented out of context." (ECF No. 165 at 2.) These arguments ignore basic evidentiary principles. To start, the Government is offering written exhibits that contain the statements being offered. Whether the writer of the statement remembers the written statement is irrelevant—the Government seeks to admit the statements themselves.

Importantly, the Government is offering these written statements pursuant to Rule 801(d)(2)(D), Rule 803(1) (present sense impression), and Rule 803(3) (then existing intent, plan, or mental feeling). None of these rules require the declarants' testimony for admissibility: Rule 801(d)(2)(D) provides that qualifying agent statements are "not hearsay" and Rule 803 outlines exceptions to the rule against hearsay that apply, "regardless of whether the declarant is available as a witness." Indeed, the Second Circuit has made clear that the declarants' availability is irrelevant to admissibility under the applicable:

> Nor is the availability of the declarant relevant under Fed. R. Evid. 801(d)(2)(D). Although such availability may be a critical issue when dealing with hearsay statements that are otherwise generally inadmissible, *see* Fed. R. Evid.. 804, Rule 801 defines certain statements as *not being hearsay*. It follows therefore that whether plaintiff should have made greater efforts to depose the unidentified declarant has no bearing on the issue of the proffered testimony's admissibility.

*Pappas v. Middle Earth Cond. Ass'n*, 963 F.2d 534, 538 (2d Cir. 1992). Further still, if the defendant believes that the declarants' testimony is relevant to explain to the jury the "context" of their prior witness statements, that goes to the statements' weight and not their admissibility. The defense will have the opportunity to cross-examine these witnesses at the hearing and if the Government calls them as witnesses at trial. Moreover, the defendant may call these witnesses in his own case-in-chief at trial. As the jury will be instructed, ECF No. 95 (Joint Requests to Charge No. 39), "each party [will have] an equal opportunity or lack of opportunity to call any of these witnesses." The defense's concern about whether the Government will ultimately call these witnesses is therefore inapposite.

*Second*, the defendant's Rule 403 objections are meritless. The defendant broadly summarizes the "probative value" of these statements as establishing that "there was a delay in Mr. Leech's allocations of trades." (ECF No. 165.) That is one purpose for some of the statements and the probative value of those statements cannot be overstated: the delay in the defendant's allocations provided him the opportunity to commit the crime. But, as will be shown in the statement-by-statement analysis after the hearing, these statements also establish a number of other important facts in dispute. These include that Trading Assistant-1 and Operations Manager-1 were diligent in their roles of obtaining and posting the defendant's trade allocations; that both of these employees were incentivized to (and did) encourage the defendant to allocate his trades as soon as possible; that the defendant changed his allocation methodology and allocation timing after being warned about the dangers of providing late allocations; that, far from making trades that were required to be allocated to a particular strategy, there were occasions where the defendant did not provide trade allocations and left his agents to figure out how to allocate his trades by asking others on the trading desk; and, that the defendant instituted, and his agents applied, a standing default rule to provide a "50/50" allocation to any trades that the defendant did not allocate at the end of the day. Defendant's remaining objections to relevance and admissibility acknowledge that they

must be weighed on a statement-by-statement basis, which is what the Court has ordered. That analysis will demonstrate their substantial probative value to important issues at trial.

*Finally*, defendant's letter confuses two separate Rules of Evidence. Defendant contends that these statements are not admissible under the defendant's view of a "reasonable" agency theory, because in the defendant's view, the witnesses cannot be "complaining about Mr. Leech on his behalf." (ECF No. 165 at 4.) That is not the test under Rule 801(d)(2)(D), which asks whether the statements are "made by the party's agent . . . *on a matter within the scope of that relationship.*" (emphasis added). Instead, the defendant is incorrectly applying the test for Rule 801(d)(2)(C), which provides that a statement is not hearsay if it "was made by a person whom the party authorized to make a statement on the subject." The Government is not seeking admission under Rule 801(d)(2)(C), so it does not need to lay a foundation that the defendant authorized these witnesses to make these particular statements.

Instead, Second Circuit caselaw directly supports the admissions of the statements. In *United States v. Lauersen*, 348 F. 3d 329, 340 (2d Cir. 2003), for example, the Second Circuit held that the statements and within the scope of a nurse's agency relationship because the "statements relate to patient files, and the nurse had 'authority to take action' regarding patient files." (quoting *Pappas v. Middle Earth Cond. Ass'n*, 963 F.2d 534, 538 (2d Cir. 1992)). In *Pappas*, the Second Circuit ordered a new trial when the district court excluded evidence that was admissible under Rule 801(d)(2)(D), explaining that "[t]he authority granted in the agency relationship need not include authority to make damaging statements, but simply the authority to take action about which the statements relate." The defendant does not distinguish *Lauersen* beyond asserting that the Second Circuit's opinion "in no way supports" the admission of the statements at issue. (ECF No. 165 at 4.)[2] Nor does the defendant dispute that the Second Circuit's "authority to take action" test, articulated in *Lauersen* and *Pappas*, controls here.

---

[2] The defendant states that the district court in *Lauersen* admitted these statements as "either an agent's statement . . . or as a coconspirator statement under Rule 801(d)(2)(E)". (ECF No. 165 at 4.) That is irrelevant because the Second Circuit addressed only the Rule 801(d)(2)(D) agency statement—holding that they were in the scope under the Second Circuit's "authority to take action" test.

4

Accordingly, the documents and witness testimony at the hearing will demonstrate that the defendant provided the witnesses "authority to take action" about the defendant's trade allocations and that each of the statements relate to the defendant's trade allocations.

Respectfully submitted,

SEAN BUCKLEY
Attorney for the Government

by: *Peter J. Davis*
Thomas Burnett/Peter Davis
Assistant United States Attorneys

Lindsey Keenan
Special Assistant United States Attorney
(212) 637-2468/1064/6523

cc: Counsel (by ECF)