

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 8, 2026

**BY ECF**

Hon. Gregory H. Woods
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:    **United States** v. **S. Kenneth Leech II**, 24 Cr. 658 (GHW)

Dear Judge Woods:

The Government writes in response to the defendant's June 6, 2026 letter regarding the pre-trial description of the case and the Government's request for certain jury instructions on intent and the definition of cherry picking. As the Government has previously stated, the Government respectfully submits that the Court should (i) use the previously agreed-upon "performance" language in the pre-trial description of the case because it is faithful to the Indictment, and (ii) grant the Government's request for an instruction on the sole-intent issue and the definition of cherry picking. The defense's arguments to the contrary misconstrue the Government's position and continue to ignore binding Circuit precedent with respect to intent in fraud cases.

**A. The Court Should Use the "Performance" Language From the Indictment When Describing the Charges Before Trial.**

With respect to the Court's pre-trial instructions, this Court should use the "performance" language from the Indictment because the pre-trial instructions are supposed to be describing the Indictment. The defense's claim that the Government has changed the definition of "performance" is wrong, and the defense's proposal to use "price" instead of "performance" is confusing in a way that will prejudice the Government.

There is no genuine dispute that the Indictment alleges that the defendant committed fraud by using first-day performance to make allocation decisions. The to-wit clauses of each of the relevant offenses allege that the defendant "engaged in a fraudulent scheme to favor certain portfolios over others by using *first-day performance* to decide how to allocate Treasury futures and options trades." Indictment ¶¶ 26, 28, 30, 32. The introductory section uses similar language, stating that the defendant "engaged in a fraudulent scheme to bolster Macro Opps, which necessarily came at the expense of the Core Strategies, by allocating trades *based on their performance* between the time he placed the trades and the time he made his allocations." *Id.* ¶ 3. Indeed, nearly every paragraph of the Indictment that describes the scheme uses that formulation.

The defense notes that the Indictment also talks about prices.  That is correct: A trade's performance is inextricably connected to prices.  For example, if someone buys an asset, and the price goes up, the trade is profitable, which is good performance.  If someone buys an asset, and the price goes down, the trade is unprofitable, which is bad performance.  That is the plain-language meaning of performance in the context of trading.

It is simply wrong for the defense to assert that the Government will argue "that 'performance' could refer to other factors, such as duration management."  Dkt. 173 at 1. Performance refers to whether a trade is profitable or not profitable, and first-day performance refers to whether it is profitable or not profitable on the first day.  That has always been the Government's position.  It tracks the Indictment, and the plain meaning of "performance."

The defense's argument to the contrary mixes different concepts.  As explained in the Government's April 22 and 29 letters (and as explained further below), the defense's new theory is that the defendant was trading; waiting to see how the duration of Macro Opps moved between his trades and trade allocations; then allocating to offset that duration.  The Government's response was that, factually, this arguments presents a false choice between allocating based on performance and allocating based on duration management.  The Government's April 22 and 29 letters make clear that the Government may argue (among other things) that the defendant could have two intentions: both to allocate based on performance (that is, profitability) and to manage duration. Accordingly, the Court should make clear to the jury that—consistent with binding Circuit precedent—if the defendant had the intent to allocate trades based on first-day performance (were they profitable or unprofitable), it is not a defense that he also intended to use the trades to manage the duration of Macro Opportunities.

There is, then, no danger in the Court using the language of "performance" in its pre-trial instructions to the jury.  The plain language meaning of a trade's performance is whether it is up or down.  Consistent with that plain language, the Indictment described the offense as making allocation decisions based on first-day performance—that is, whether the trades were winning or losing.  And the Government's rejoinder to the defense's new theory does not change the meaning of "performance"; it just points out the defendant could have had *two* goals—giving Macro Opportunities profitable trades *and* managing its duration—and that such a scenario is a crime.

By contrast, the defense's argument for using the word "price" or the phrase "first-day price performance" is meritless.  There is no legal authority for the defense to re-write the Indictment to its liking.  And both of its proposals are confusing in ways that would prejudice the Government.  For one, using "price" is far too imprecise.  There jury may hear about many different prices in the case: such as the price at execution, the price at allocation, the price of the traded derivative, and the price of the instrument underlying the derivative.  And depending on which "price" is being referred to, the relationship between price and profitability can be complicated.  For instance, if a trader buys a put option, the trade is profitable if the "price" of the *option* rises, but may be unprofitable if the "price" of the underlying instrument rises.

The phrase "price performance" suffers from those same problems, and has the added issue of being an invention of the defense's making.  People do not use the phrase "price performance" to refer to whether a trade is profitable or unprofitable.  It is apt to confuse both the jury and

witnesses the Government anticipates calling, who can easily answer questions about "performance" but are likely to give a quizzical look when asked about "price performance."

In short, performance has a clear meaning. It is in the Indictment. The defense agreed to use the phrase up until a few weeks ago. And the claim that the Government is trying to change the meaning of "performance" is incorrect. The Court should reject the defense's proposals.

### B. The Court Should Adopt the Government's Proposed Jury Instructions.

The defense's arguments against the Government's proposed jury instructions fail for similar reasons. The claim that the Government has changed its theory of the case by expanding the meaning of "performance" is false. Rather, the Government explained in its April 22 and 29 letters that—consistent with the principle that intent to defraud need not be the defendant's sole intent—the defendant is guilty if he *both* intended to allocate trades based on first-day performance *and* wanted to manage the duration of Macro Opps. The defense has continuously ignored the binding Circuit precedent that requires giving that instruction.

In its April 22 letter, the Government explained that the defense's new duration-management theory underscored the need to give two instructions included in the Government's requests to charge: An instruction explaining that "cherry picking—which is when a fiduciary engages in a scheme to allocate better-performing trades to favored accounts after observing market-movements, while assigning worse-performing trades to other accounts or clients—is a type of fraudulent scheme or practice if it is not disclosed to clients." Dkt. 95, at 9. And an instruction clarifying that "[a] defendant may have the requisite intent to defraud even if the defendant was motivated by other lawful, proper, or neutral purposes or reasons for his actions." Dkt. 95, at 13.

Both instructions are legally accurate, consistent with the theory of the case charged in the Indictment, and essential for the jury to understand the case. Start with the instruction defining cherry picking. The defense does not contest the legal principle that cherry-picking is a scheme to defraud. And the decision the defense cites support the Government's formulation because those decisions consistently describe cherry picking as "allocate[ing] profitable trades to a preferred account . . . and less profitable or unprofitable trades to a non-preferred account." *SEC v. World Tree Fin., LLC*, 43 F.4th 448, 460 n.4 (5th Cir. 2022). That is allocating trades based on performance.

Rather than contesting the Government's proposed instruction, the defense asserts that "[t]he government now appears to argue that allocating trades to manage post-trade-execution duration changes would be sufficient for the jury to convict." Dkt. 173 at 6. That is simply not true, and the Government has already said so. In its April 29 letter, the Government wrote: "[T]he Government does not contend (as the defense suggests) that the jury can convict if it finds that the defendant intentionally allocated trades based on duration changes in a portfolio and that merely had an effect on the price of the allocated trades." If the jury finds that defendant was allocating trades "to manage post-trade-execution duration changes," Dkt. 173, at 6, and it does *not* find that he was allocating trades based on first-day performance—that is, based on the profitability or unprofitability of the trades—then that would be insufficient for the jury to convict.

The Government's actual argument—and the reason for the Government's proposed instruction on sole intent—addresses the scenario where the jury finds the defendant was *both* allocating trades to manage duration and because of their first-day performance. That is, the defendant had dual intents.

Notably, the defense does not contest the settled principle that, to commit fraud, the specific intent to defraud does not need to be the defendant's "sole, or even primary, purpose." *United States v. Technodyne LLC*, 753 F.3d 368, 385 (2d Cir. 2015). The defense also continues to ignore a binding Circuit decision applying that principle to a case that involved similar arguments to the defense arguments here. As explained in the Government's April 22 letter, in *United States v. Phillips*, the defendant was charged with committing fraud by manipulating an exchange rate to trigger a payout under an option. 155 F.4th 102, 108-11 (2d Cir. 2025). The defendant carried out that scheme by buying large quantities of a foreign currency. The Government argued that the point of that large purchase was to fraudulently inflate the value of the currency. The defense countered that the defendant instead purchased the foreign currency to manage the risk profile of his portfolio. *See id.* The defense in *Phillips* sought a jury instruction that the jury could convict only if the defendant's sole intent was to fraudulently manipulate the currency. *Id.* at 125-26. That is, if the defendant *both* intended to manipulate and to manage his risk, he should be acquitted.

The District Court rejected that argument, and the Second Circuit affirmed. The Circuit explained that "[t]he intent element for specific intent crimes . . . can usually be satisfied even if the defendant has multiple reasons for taking an action, so long as one reason is the intent to deceive." *Id.* at 126. It would have been appropriate for the jury to convict the defendant even if he *both* intended to deceive and manage his portfolio's risk. *See id.* at 125.

Here, the Government is asking this Court to instruct the jury on that same legal principle: If the defendant allocated trades based on first-day performance, it is not a defense if the defendant *also* had other reasons for those allocations, such as duration management. That is not, as the defense claims, changing the Government's theory of the case. The jury must still find that the defendant was allocating trades based on first-day performance—that is, because they were profitable or unprofitable. It just clarifies for the jury the accurate legal principle that, if the defendant was doing that, and he also had other reasons for his allocations (such as duration management), then those other reasons are not a defense to fraud. Failing to give that instruction, as the defense urges, would be legal error and would significantly prejudice the Government.

The remainder of the Government's April 22 and 29 letters explain, *factually*, why the jury could find that the defendant allocated trades *both* based on first-day performance and on managing duration. The normal way that professionals manage duration is to see how the duration of their portfolios moves, then make a trade to respond to that change, if necessary. Indeed, that is how the defendant and his attorneys described the defendant's practices until very recently.

The defense's new theory is that the defendant traded *before* knowing how the duration of his portfolios was going to change, waited to see what would happen, and assigned trades to Macro Opps if they helped manage the duration of that portfolio. The evidence at trial will show that makes very little sense. For example, what do you do if the trade does not help the duration of Macro Opps? What do you do if it is too large, or too small, to correct the duration change?

There is, however, one advantage to the process described in the defense's new theory—it would create an opportunity for the defendant to cherry pick. As explained in the Government's prior letters, if the defendant *responded* to a duration change, he would have to do so at whatever prices are available in the market at that time. But because of the negative convexity in Macro Opps, if the defendant traded first, waited to see what happened, then allocated trades to Macro Opps that helped its duration, he would not just get to manage the duration of Macro Opps, he would get to do it *with profitable trades*, while sending the *unprofitable* trades to the Core Strategies. In other words, the defendant could always manage duration by trading in response to duration moves. The reason to trade before duration moves would be to manage duration *and* cherry pick based on performance.

To be clear, this does not mean, as the defense claims, that the Government's position is "trad[ing] to manage post-trade-execution duration changes would be sufficient for the jury to convict." Dkt. 173 at 6. Rather, the Government's April 22 and 29 letters endeavored to explain why the jury could find, factually, that the defendant was both intentionally allocating based on first-day performance and to manage post-trade-execution duration changes. If the jury made such a finding, that would be sufficient to convict because intentionally allocating based on first-day performance—that is profitability or unprofitability—is fraud, even if it is not the defendant's "sole, or even primary, purpose." *Technodyne*, 753 F.3d at 385.

In light of binding Circuit precedent, the defense's challenges to the Government's proposed instructions are meritless. The defense's argument that the Court should use the phrase "price performance" instead of "performance" is wrong and prejudicial. It is based on a misguided notion that the Government has tried to change the definition of "performance." And, as explained above, the use of the concocted phrase "price performance" is imprecise and will be confusing to jurors and witnesses alike. The defense's effort to nix the instruction that sole intent is not required to commit fraud is also plainly erroneous. Eliminating that instruction would leave the jury with an incorrect understanding of the law on what could be an important issue in the case. The defense cites no legal authority for skipping it, and their argument about the Government's supposedly shifting theory is wrong.

Accordingly, the Government respectfully submits that the Court should give the pre-trial description of the case to which the parties had previously agreed, and the Court should issue the Government's proposed—and correct—instructions on intent and the definition of cherry picking.

Respectfully submitted,

SEAN BUCKLEY
Attorney for the Government

by:   __/s/_____
Thomas Burnett/Peter Davis
Assistant United States Attorneys

Lindsey Keenan
Special Assistant United States Attorney
(212) 637-2468/1064/6523